UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE          )
COMMISSION,                      )
                                 )
          Plaintiff,             )
                                 )   CIVIL ACTION NO.
v.                               )   16-10874-DPW
                                 )
ROSS I. MCLELLAN,                )
                                 )
          Defendant.             )

MEMORANDUM AND ORDER
REGARDING
<u>FINAL JUDGMENT</u>
June 17, 2024

Pending before me is an assented-to motion by the Securities and Exchange Commission (the "Commission" or "SEC") for entry of a Proposed Final Judgment against Defendant Ross I. McLellan.  [Dkt. No. 38].  The Commission attached to its motion the Final Judgment proposed [Dkt. No. 38-2], along with an associated "Consent" of Defendant Ross I. McLellan signed by Mr. McLellan [Dkt. No. 38-1] that memorializes his agreement to certain additional undertakings and agreements said to be "incorporated" by reference in the proposed Final Judgment "as if fully set forth [h]ereafter."

I will enter Final Judgment only addressing matters germane to this civil matter.  In this sense, Final Judgment will be entered shorn of certain additional undertakings and agreements

only set forth in the associated Consent.  The "Consent" is designed to sidestep FED. R. CIV. P. 65.[1]  Whatever private understanding the parties may have to animate that use, it must be enforced, if ever it is, by private remedies, not the apparatus of a court's contempt proceeding.

In essence, the proposed Final Judgment imposes on Mr. McLellan a permanent injunction against violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5], and Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1), 77q(a)(3)].  The Commission does not seek disgorgement or a civil monetary fine in this case.

## I. BACKGROUND

The Commission commenced this action against Mr. McLellan, a former State Street Corporation ("State Street") executive, on May 13, 2016, alleging that he engaged in securities fraud in violation of Sections 17(a)(1) and 17(a)(3) of the Securities

---

[1] The "incorporation" of a separate and free standing "Consent" to expand the meaning of the injunctive provisions of the proposed Final Judgment is in derogation of FED. R. CIV. P. 65(d)(c) which directs that "[e]very order granting an injunction" "describe in reasonable detail — and not by referring to . . . [any] other document — the act or acts restrained."

Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c).  [Dkt. No. 1].

Between February 2010 and September 2011, Mr. McLellan and two other State Street employees are alleged to have "schemed to defraud" at least six institutional customers of State Street's Transition Management line of business by "charging those customers hidden and unauthorized mark-ups (or amounts added to the cost of the service) on trading in U.S. and European securities."  [Dkt. No. 1 ¶ 1].

Beyond engaging in the misconduct directly, Mr. McLellan was alleged to have directed subordinates to mislead customers and/or conceal markups [Dkt. No. 1 ¶ 7] and to have given "specific instructions aimed at keeping mark-ups hidden."  [Dkt. No. 1 ¶ 31].  The scheme crossed countries and continents, and netted approximately $20 million in fraudulent overcharges. [Dkt. No. 1 ¶ 1, ¶¶ 34-36 (allegations involving "government body responsible for management and administration of assets of a country located in the Middle East Region," aka the "Middle Eastern Sovereign Wealth Fund"), ¶¶ 37-67 ("an Irish Government Agency"), ¶¶ 68-76 ("a British Postal Company"), ¶ 77 ("a UK-based pension fund," "a €1.6 billion . . . transition in the Netherlands that required the restructuring of the Euro-denominated fixed income portfolios of two pension funds," and "a telecommunications agency in the Republic of Ireland.")].

Then, after one of the targeted investors raised suspicions regarding the undisclosed markups, Mr. McLellan, with the two other employees, orchestrated a cover-up aimed at keeping the scheme secret and avoiding attention from State Street's compliance or legal departments.  [Dkt. No. 1 ¶¶ 79-86].

Shortly after the SEC filed this case, the United States Attorney's Office for the District of Massachusetts ("USAO") moved [Dkt. No. 15] to intervene and for a partial stay in this case pending resolution of a parallel federal criminal case, *United States* v. *McLellan*, No. 16-cr-10094-LTS (D. Mass. Mar. 31, 2016), before Judge Sorokin that addressed essentially the same misconduct.  I allowed the motion for a partial stay and ordered that trial in this civil case would be scheduled after the criminal case was resolved, recognizing that if Mr. McLellan was found guilty in the criminal matter, *res judicata* rules would likely apply here against Mr. McLellan in some fashion.

The criminal trial commenced on June 4, 2018, and fifteen trial days later the jury returned a guilty verdict on five of six counts in the indictment, mirroring the same course of conduct alleged in the SEC's complaint before me, including one count of conspiracy to commit securities fraud and wire fraud, [18 U.S.C. § 371], two counts of securities fraud [15 U.S.C. §§ 78j(b) & 78ff(a) and 17 C.F.R § 240.10b-5], and two counts of wire fraud [18 U.S.C. § 1343 and 18 U.S.C. § 2].

4

On October 18, 2018, Judge Sorokin sentenced Mr. McLellan to eighteen months' incarceration followed by two years of supervised release, a $5,000 fine, and a $500 special assessment.  On May 20, 2020, the Court of Appeals for the First Circuit affirmed Mr. McLellan's conviction.  *United States* v. *McLellan*, No. 18-2032 (1st Cir. 2020).  Mr. McLellan reported to FMC Devens on July 7, 2020 to begin serving his sentence.

Following a "sudden and massive" COVID-19 outbreak at FMC Devens, in January 2021, Judge Sorokin allowed a motion for compassionate release made by Mr. McLellan and amended the judgment to, among other things, reflect a sentence of time served and increase the term of supervised release from two to three years.

Meanwhile, following the First Circuit's decision, the parties in this case worked out a settlement that was designed to resolve this matter and enjoin Mr. McLellan from engaging in any future securities law violations.  In particular, the parties' proposal invokes this Court's power to grant a permanent injunction against violations of the federal securities laws under Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)] and seeks a permanent injunction from (i) Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), 77q(a)(3)] and (ii) violations of Section 10(b) of

the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5].[2]

   In the form ultimately pressed by the Commission with Mr. McLellan's assent, the proposed Final Judgment did not itself seek disgorgement or a civil monetary fine.

---

[2] The proposed Final Judgment provides for injunctive relief against Mr. McLellan, his "officers, agents, servants, employees, and attorneys[,]" and any "other persons in active concert or participation with [Mr. McLellan] or with anyone described [above]" from

                              I.
      . . . violating Sections 17(a)(1) and 17(a)(3) of [the
      Securities Act] in the offer or sale of any security
      by the use of any means or instruments of
      transportation or communication in interstate commerce
      or by use of the mails, directly or indirectly:
(a)   to employ any device, scheme, or artifice to defraud;
      or
(b)   to engage in any transaction, practice, or course of
      business which operates or would operate as a fraud or
      deceit upon the purchaser.
      [. . .]
                              II.
      . . . violating, directly or indirectly, Section 10(b)
      of the [Exchange Act] and Rule 10b-5 promulgated
      thereunder. By using any means or instrumentality of
      interstate commerce, or of the mails, or of any
      facility of any national securities exchange, in
      connection with the purchase or sale of any security:
(a)   to employ any device, scheme, or artifice to defraud;
(b)   to make any untrue statement of a material fact or to
      omit to state a material fact necessary in order to
      make the statements made, in the light of the
      circumstances under which they were made, not
      misleading; or
(c)   to engage in any act, practice or course of business
      which operates or would operate as a fraud or deceit
      upon any person.
[Dkt. No. 38-2 (internal citations omitted)]

On December 8, 2020, I held the first of two hearings on the proposed Final Judgment, during which I expressed concerns regarding the Commission's decision to forgo a civil monetary penalty and to include an administrative bar only in a Commission Order in the parallel SEC administrative proceeding and not in the civil judgment proposed in this case.  Upon my request, the parties submitted additional briefing on these issues.

I heard further argument on February 11, 2021, at which time I expressed separate concerns regarding the scope of the Commission's proposed obey-the-law injunction.

At the February 11 hearing, the Commission informed me that the SEC's parallel administrative proceedings were on hold pending the outcome of this case.  Seeing no reason why this matter should hold up that other matter, I recommended the SEC pursue the administrative proceedings and ordered the Commission to advise when they were complete.  [Dkt. Nos. 44, 45].  The Commission did so on March 3, 2021, providing the Order Instituting Administrative Proceedings Pursuant to Section 15(b) of the [Exchange Act], Making Findings, and Imposing Remedial Sanctions (the "Administrative Order"), entered pursuant to a settlement agreement between Mr. McLellan and the SEC.  [Dkt. Nos. 47, 47-1 (Administrative Order)].

The Administrative Order, *inter alia*, barred Mr. McLellan from

> association with any broker, dealer, investment
> adviser, municipal securities dealer, municipal
> advisor, transfer agent, or nationally recognized
> statistical rating organization; and

> . . . participating in any offering of a penny stock,
> including: acting as a promoter, finder, consultant,
> agent or other person who engages in activities with a
> broker, dealer or issuer for purposes of the issuance
> or trading in any penny stock, or inducing or
> attempting to induce the purchase or sale of any penny
> stock.

[Dkt. No. 47-1].

After extensive review during which the Commission has not sought to recede from its overbroad collection of injunctive obligations to be undertaken by Mr. McLellan, and despite my continued reservations about the invocation of this court's jurisdiction to provide a judicial enforcement mechanism for all of that collection, I have determined to provide only the limited equitable relief under FED. R. CIV. P. 65 supported by the record in this case.

## II. STANDARDS OF REVIEW

### A. *Consent Decrees*

"The standard for reviewing a proposed consent judgment involving an enforcement agency requires that the district court determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the 'public

interest would not be disserved,' in the event that the
consequent decree includes injunctive relief." *SEC* v. *Citigroup
Glob. Mkts., Inc.*, 752 F.3d 285, 294 (2d Cir. 2014) (quoting
*eBay, Inc.* v. *MercExchange*, 547 U.S. 388, 391, 126 S. Ct. 1837
(2006) ("omit[ting] 'adequacy' from the standard" because
"[s]crutinizing a proposed consent decree for 'adequacy' appears
borrowed from the review applied to class action settlements,
and strikes us as particularly inapt in the context of a
proposed S.E.C. consent decree"); *see SEC* v. *Acosta*, No. 21-cv-
1435, 2021 WL 5631726, at *1 (D.P.R. Dec. 1, 2021) ("We review
consent decrees to ensure that they are reasonable and both
procedurally and substantively fair.") (citing *City of Bangor* v.
*Citizens Commc'ns Co.*, 532 F.3d 70, 93 (1st Cir. 2008)).
"Absent a substantial basis in the record for concluding that
the proposed consent decree does not meet those requirements,
the district court is required to enter the order." *Citigroup
Glob. Mkts.*, 752 F.3d at 294; *see also U.S.* v. *Cannons Eng'g
Corp*, 899 F.2d 79, 84 (1st Cir. 1990) (noting that where "a
government actor committed to the protection of the public
interest," and a defendant "knowledgeable and represented by
experienced lawyers," have together "hammered out an agreement
at arm's length and advocate[d] its embodiment in a judicial
decree," "[r]espect for the agency's role" "has particular
force"). "The relevant standard, after all, is not whether the

9

settlement is one which the court itself might have fashioned or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute[s]." *Id.*

Nevertheless, "[w]hen . . . a federal agency such as the S.E.C. seeks to prospectively invoke the Court's own contempt power by having the Court impose injunctive prohibitions against the defendant, the resolution has aspects of a judicial decree and the Court is therefore obliged to review the proposal a little more closely . . . ." *SEC* v. *Bank of Am. Corp.*, 653 F. Supp. 2d 507, 508 (S.D.N.Y. 2009) (rejecting proposed consent judgment because it was "neither fair, nor reasonable, nor adequate") (Rakoff, J.); *see also SEC* v. *Bank of Am. Corp.*, No. 09 Civ. 6829(JSR), 10 Civ. 0215, 2010 WL 624581, at *5-6 (S.D.N.Y. Feb. 22, 2010) (recognizing that "the considerable power given federal judges to assure compliance with the law should never be confused with any power to impose their own preferences" and "reluctantly" approving a revised settlement proposal, which "[w]hile better than nothing," remained "half-baked justice, at best") (Rakoff, J.); *see also SEC* v. *CR Intrinsic Inv., LLC*, 939 F. Supp. 2d 431, 436-37 (S.D.N.Y. 2013) ("[T]he Court must avoid undue meddling and second-guessing, and must accord government agency law enforcement and financial determinations . . . the proper level of deference they are due.

At the same time, the Court cannot conceive that Congress intended the judiciary's function in passing upon these settlements as illusory, as a predetermined rubber stamp for any settlement put before it by an administrative agency[.]") (Marrero, J.), *abrogated on other grounds by Citigroup Glob. Mkts.*, 752 F.3d at 294.

In evaluating whether the proposed consent judgment is fair and reasonable, a court should assess, "at minimum"

> (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind.

*Citigroup Glob. Mkts.*, 752 F.3d at 294-95 (internal citations omitted).  In a case proposing injunctive relief, like this one, the court must then determine whether the "public interest would not be disserved" by the requested injunction.  *Id.* at 296.  It is the Commission's job to make this determination before coming to the court, and if it does, its decision "merits significant deference."  *Id.* (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 866, 104 S. Ct. 2778 (1984)).

**B.   *Injunctive Relief under 15 U.S.C. §§ 78u(d)(1) & 77t(b)***

Federal securities law authorizes the SEC to seek an injunction in federal district court to prevent future

violations of the securities laws. *SEC* v. *Sharp*, 626 F. Supp.
3d 345, 398-99 (D. Mass. 2022) (citing *SEC* v. *Sargent*, 329 F.3d
34, 39 (1st Cir. 2003)); *see generally* 15 U.S.C. § 78u(d)(1); 15
U.S.C. § 77t(b).[3] An injunction is appropriate where there is,
"'at a minimum, proof that a person is engaged in or is about to
engage in a substantive violation of either one of the Acts or
of the regulations promulgated thereunder.'" *Sargent*, 329 F.3d
at 39 (quoting *Aaron* v. *SEC*, 446 U.S. 680, 700-01, 100 S. Ct.
1945 (1980)); *see SEC* v. *Duncan*, No. 3:19-cv-11735, 2022 WL
952266, at *1 (D. Mass. Mar. 30, 2022) ("The legal standard
applied to determine whether injunctive relief is warranted is

---

[3] 15 U.S.C. § 78u(d)(1) reads:
> Whenever it shall appear to the Commission that any
> person is engaged or is about to engage in acts or
> practices constituting a violation of any provision of
> this chapter, the rules or regulations thereunder, the
> rules of a national securities exchange or registered
> securities association of which such person is a
> member or a person associated with a member, the rules
> of a registered clearing agency in which such person
> is a participant, the rules of the Public Company
> Accounting Oversight Board, of which such person is a
> registered public accounting firm or a person
> associated with such a firm, or the rules of the
> Municipal Securities Rulemaking Board, it may in its
> discretion bring an action in the proper district
> court of the United States, the United States District
> Court for the District of Columbia, or the United
> States courts of any territory or other place subject
> to the jurisdiction of the United States, to enjoin
> such acts or practices, and upon a proper showing a
> permanent or temporary injunction or restraining order
> shall be granted without bond.

15 U.S.C. § 77t(b) is substantially similar.

whether there is a reasonable likelihood that the defendant will engage in future violations of the law." (punctuation and citations omitted)).  Indeed, "[u]nless the [SEC] shows a real threat of future harm, 'there is in fact no lawful purpose to be served' by a preventive injunction." *SEC* v. *Gentile*, 939 F.3d 549, 556 (3d Cir. 2019) (quoting *SEC* v. *Torr*, 87 F.2d 446, 450 (2d Cir. 1937) (Hardiman, J.)).

When "predicting the reasonable likelihood of future violations," courts look to the totality of the circumstances and weigh the following factors:

> (1) [the] degree of scienter involved, (2) the defendant's recognition of wrongful conduct, and the sincerity of his assurances against future violations, (3) the isolated or recurrent nature of the infraction, (4) the egregiousness of the conduct, (5) the likelihood of future violations, and (6) the possible adverse impact and hardship on defendant counterbalanced by the public interest which is paramount.

*Sharp*, 626 F. Supp. 3d at 399 (internal punctuation and citations omitted); *see also SEC* v. *Weed*, 315 F. Supp. 3d 667, 676 (D. Mass. 2018).

Trial courts have considerable discretion in applying these factors and deciding whether injunctive relief is appropriate. *Duncan*, 2022 WL 952266, at *1 (citing *SEC* v. *John Adams Tr. Corp.*, 697 F. Supp. 573, 577 (D. Mass. 1988)).  In doing so, however, courts should keep in mind that "SEC injunctions come with serious collateral consequences," including "administrative

sanctions and disabilities," and "harm to . . . personal and
business reputations." *Gentile*, 939 F.3d at 566 (internal
citations omitted).  "In other words, the harsh effects of an
SEC injunction demand that it not be imposed lightly or as a
matter of course, that it be imposed only upon a meaningful
showing of necessity, and when it is imposed, that it be as
short and narrow as possible." *Id.* at 559.

An injunction that "simply admonish[es] [a defendant] to
obey the federal securities law in [the] future" is known as an
"obey-the-law" injunction. *SEC* v. *Jones*, 300 F.Supp.3d 312, 318
(D. Mass. 2018); *see also SEC* v. *Goble*, 682 F.3d 934, 949 (11th
Cir. 2012) ("As the name implies, an obey-the-law injunction
does little more than order the defendant to obey the law.")
(Cox, J.)  Although such injunctions have become a primary
enforcement tool relied on by the SEC, they can have "grave
consequences, especially for individuals who are regularly
involved in the securities industry, because the injunction
places them in danger of contempt charges in all future
securities transactions." *SEC* v. *Compania Internacional
Financiera S.A.*, No. 11 CIV 4904 DLC, 2011 WL 3251813, at *10
(S.D.N.Y. July 29, 2011) (quotations omitted).

Some courts have consequently questioned obey-the-law
injunctions on the basis of (1) Federal Rule of Civil Procedure
65(d), because it is disputable whether such injunctions meet

14

the Rule's requirement that any injunction "describe in reasonable detail — and not by referring to the complaint or other document — the act or acts restrained or required";[4] (2) the Due Process Clause of the Fifth Amendment and the Seventh Amendment, because obey-the-law injunctions "permit[] the Commission to achieve through the mere filing of a motion a result that, absent the injunction, the Commission could achieve only through a full-scale prosecution," *SEC* v. *Sky Way Glob.*, 710 F. Supp. 2d 1274, 1279-81 (M.D. Fla. 2010);[5] and (3)

---

[4] *See, e.g.*, *Jones*, 300 F.Supp.3d at 318 ("While such obey-the-law injunctions may or may not be enforceable depending on the specific circumstances, in this particular case, the court is of the view that the SEC's requested injunctive relief would not defensibly comport with Rule 65." (cleaned-up)); *Goble*, 682 F.3d at 950-51 ("An injunction should clearly let a defendant know what he is ordered to do or not to do.  A court order should be phrased in terms of objective actions, not legal conclusions . . . [If] an injunction simply used the language of [a statute or regulation], a defendant reading the injunction would have little guidance on how to conform his conduct to the terms of the injunction."  (punctuation and citations omitted)); *SEC* v. *Wash. Inv. Network & Robert Radano*, 475 F.3d 392, 396 (D.C. Cir. 2007) (finding an obey-the-law injunction "insufficiently specific" because it "fail[ed] to clarify 'the act or acts sought to be restrained,' and . . . might subject defendants to contempt for activities having no resemblance to the activities that led to the injunction, thereby being overly broad in its reach" (quoting FED. R. CIV. P, 65(d)).

[5] *See, e.g.*, *Goble*, 682 F.3d at 949 & n.10 ("condemn[ing]" obey-the-law injunctions "because they lack specificity and deprive defendants of the procedural protections that would ordinarily accompany a future charge of a violation of the securities laws. . . . For example, if the SEC suspects that the defendant has violated the obey-the-law injunction it may initiate a criminal contempt proceeding. And, at this proceeding, the defendant has no right to a trial by jury so long as the sentence imposed is less than six months").

separation of powers concerns, because "the Commission (vested with only civil enforcement authority) procures the ability to criminally punish the defendant in perpetuity . . . through an obey-the-law injunction even though the statutory scheme contemplates [i] the enjoining of a certain, identifiable, and demonstrably imminent act or practice; [ii] the Attorney General's prosecuting criminal violations of the securities law; and [iii] precisely delineated tiers of a civil penalty, which tiers correlate to the facts and circumstances underlying each violation." *Sky Way Glob.*, 710 F.Supp.2d at 1282.

Nevertheless, I recognize that other courts — and of special relevance, a number of my colleagues in this district — continue to order such injunctions under what appear to them appropriate circumstances. *See, e.g.*, *SEC* v. *Caplitz*, No. 1:13-cv-10612, ECF 78 (D. Mass. Feb. 14, 2020)(entering proposed consent judgment that included permanent injunction enjoining defendant from violating Section 10(b) of the Exchange Act and Rule 10b-5, Section 17(a) of the Securities Act, and Sections 206(a) and 206(2) of the Investment Advisers Act of 1940, [15 U.S.C. § 80b-6(1)]) (Wolf, J.); *SEC* v. *Chan*, 465 F. Supp. 3d 18, 39 (D. Mass. 2020) (granting a permanent injunction enjoining the defendant from future violations of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5) (Burroughs, J.); *Weed*, 315 F. Supp. 3d at 676 (granting injunction "enjoining [defendant] from future

16

violations of Section 10(b), Rule 10b-5 and Section 17(a)")
(Gorton, J.).  *Cf. Merriam* v. *Demoulas*, No. 11-cv-10577, 2013 WL
2422789, at *10 (D. Mass. Jun. 3, 2013) (noting "such 'obey-the-
law' injunctions may or may not be enforceable depending on the
specific circumstances," and alluding to possible FED. R. CIV. P.
65(d)(1)(C) specificity concerns) (Zobel, J.).

## C.    *Civil Monetary Penalties under 15 U.S.C. §§ 78u(d)(3) & 77t(d)*

Federal securities law also empowers the Commission to seek
civil monetary fees in federal court.  *See* 15 U.S.C. § 77t(d);
15 U.S.C. § 78u(d)(3).  Such penalties cannot exceed the greater
of (i) the gross pecuniary gain to a defendant as the result of
a violation, or (ii) a specified amount per violation, to be
determined based on whether the violation was a "first tier,"
"second tier" or "third tier" infraction.  *Id.*; *see SEC* v.
*Esposito*, 260 F. Supp. 3d 79, 92-93 (D. Mass. 2017) (explaining
"Tier I penalties are generally applicable[,] Tier II penalties
require 'fraud, deceit, manipulation, or a deliberate or
reckless disregard of a regulatory requirement,' and Tier III
penalties require the Tier II elements plus 'substantial losses
or . . . significant risk of substantial losses to other
persons'" (quoting 15 U.S.C. § 77t(a)(2)) (additional quotation
marks, punctuation, and citation omitted) (Burroughs, J.).
Third tier violations that took place between March 4, 2009, and

17

March 5, 2013 (as Mr. McLellan's admitted violations did) carry a maximum penalty amount of $150,000 per violation.  15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); 17 C.F.R. § 201.1001(b).

Such penalties "'are intended to punish the individual wrongdoer and [] deter him and others from future securities violations.'"  *Esposito*, 260 F. Supp. 3d at 93 (quoting *SEC* v. *Monterosso*, 756 F.3d 1326, 1338 (11th Cir. 2014)).  "In determining the appropriate fine, courts have considered factors including the egregiousness of the violation, the defendant's willingness or failure to admit wrongdoing, the isolated or repeated nature of the violations, the degree of scienter involved, the defendant's cooperation or lack thereof with authorities, and the defendant's current financial condition."  *Id.* (citing *SEC* v. *Converge Glob., Inc.*, No. 04-80841CV, 2006 WL 907567, at *6 (S.D. Fla. Mar. 10, 2006); *SEC* v. *Cavanagh*, No. 98-1818DLC, 2004 WL 1594818, at *31 (S.D.N.Y. July 16, 2004)).

In considering the deterrent purpose of such fines, where a defendant has already been criminally convicted on the same underlying conduct and faced fines and/or incarceration sufficient to discourage future wrongdoing, the Commission has accepted civil settlement offers that do not include additional monetary penalties.  *See, e.g.*, *Caplitz*, No. 1:13-cv-10612, ECF 78 (D. Mass. Feb. 12, 2020) (ordering disgorgement and noting that "[n]o civil penalty shall be imposed in light of the

judgment entered against Defendant in *United States* v. *Gregg Caplitz*, pursuant to which Defendant was sentenced to a term of imprisonment of three and a half years"); *SEC* v. *Caspersen et al.*, No. 16-cv-2249, ECF 23 (S.D.N.Y. Jan. 30, 2017) (entering consent judgment ordering injunctive relief and disgorgement, and noting that "[c]ivil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] are not being imposed in light of Defendant's sentence in the criminal action *U.S.* v. *Caspersen*")(Berman, J.).[6]

### III. DISCUSSION

As a general proposition, I do not reflexively endorse "rubber-stamp[ing]" civil consent judgments that carry the imprimatur of this Court, even where the culpable conduct resulted in a criminal conviction and the agency involved is allowed some deference in settling its own cases. *See Gentile*, 939 F.3d at 565.  Nevertheless, after carefully weighing the

---

[6] The Exchange Act further allows for disgorgement damages. *See* 15 U.S.C. § 78u(d)(7) ("In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement.")  The Commission does not seek disgorgement here because the SEC "also reached an agreement with State Street as an entity, as did [they] believe the U.S. Attorney's Office" and "to the best of [the SEC's] knowledge, all of the harmed parties have been made whole by State Street."  [Dkt. No. 40, 12/11/2020 Hearing Tr. at 4:15-19]  Therefore, there is no need for disgorgement in this case.  [Dkt. No. 45, 02/19/2021 Hearing Tr. at 19:24-20:2]

facts of this case, hearing on multiple occasions from the
parties [Dkt. Nos. 40, 45], reviewing closely their supplemental
briefing [Dkt. Nos. 42, 43], and reading and rereading the
relevant case law over the period of time the motion has been
under advisement, I find that the core of the proposed Final
Judgment is fair and reasonable and that the "public interest
would not be disserved" by the injunctive relief included in
that core. *Citigroup Glob. Mkts.*, 752 F.3d at 294; *see also
F.T.C.* v. *Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir.
1987) ("When a public agency requests that a judicial stamp of
approval be placed on a negotiated consent decree, the court has
the duty to approve the decree unless it is 'unfair, inadequate[7]
or unreasonable.'" (quoting *SEC* v. *Randolph*, 736 F.2d 525, 529
(9th Cir. 1984)).  In making my "fair and reasonable"
determination, I apply the four *Citigroup* factors discussed
above.

    First, the core agreement is legal.  *See Citigroup Glob.
Mkts.*, 752 F.3d at 294-95 (enumerating the four factors I must
analyze).  The Final Judgment is, principally, an obey-the-law
injunction that proscribes Mr. McLellan from ever again flouting
the securities laws he was found criminally to have violated,

---

[7] I decline to employ an "inadequacy" dimension to the evaluation
of a consent decree because I adopt the more modern view that it
is inapt in the context of a proposed SEC consent decree.  *See
supra* page 9.

20

namely Section 10(b) of the Exchange Act and Rule 10b-5

promulgated thereunder, as well as Sections 17(a)(1) and

17(a)(3) of the Securities Act.[8]  [Dkt. No. 38-2].  Although

these provisions are exceedingly broad and leave Mr. McLellan

forever exposed to a jury-waived civil contempt proceeding

should he commit virtually any form of fraud or deceit involving

securities — even those involving securities that are unrelated

to the specific transactions and services that formed the basis

of Mr. McLellan's securities law violations, such as penny

stocks — I cannot say all potential circumstances which the

injunction might reach would fall outside of what Federal Rule

of Civil Procedure 65(d) allows.

---

[8] Mr. McLellan was not indicted or convicted of having violated
Sections 17(a)(1) and 17(a)(3) of the Securities Act, which
prohibit the offer or sale of any securities using "any device,
scheme or artifice to defraud," or "any transaction, practice,
or course of business which operates or would operate as a fraud
or deceit upon the purchaser."  [15 U.S.C. §§ 77q(a)(1) and
77q(a)(3)]  These provisions are included in the Final Judgment
because Mr. McLellan is alleged in this case to have engaged in
the buying and selling of securities, some of which may have
been newly issued securities regulated by the Securities Act,
through the fixed income transactions that form the basis of
both this case and the criminal trial.  [Dkt. No. 1, Compl. ¶¶
3, 21; *id.* at 26]  Since Mr. McLellan has already been found
criminally liable for violating the Exchange Act's anti-fraud
provisions, the parties can appropriately include in their
agreement additional protection from any future violations of
the Securities Act's essentially parallel provisos.  *Cf. Chan*,
465 F. Supp. 3d at 31 (noting that "securities fraud defendants
have been unsuccessful in asserting in this Circuit that the SEC
should be judicially estopped from asserting different theories
at different proceedings").

"When we grant an injunction, Rule 65(d)(1) requires us to: (1) 'state [our] reasons' for it (2) 'state its terms specifically,' and (3) 'describe in reasonable detail' the enjoined acts." *Acosta*, 2021 WL 5631726, at *2 (quoting FED. R. CIV. P. 65(d)(1)).  Here, the reason for the injunction is that "the parties have agreed to it, [and] the SEC made the policy choice to include it as part of the resolution of this case." *Id.*; *see also Citigroup Glob. Mkts.*, 752 F.3d at 294.  Moreover, although this involves Mr. McLellan's first instance of document securities fraud, the scheme within which he found himself embroiled — and, indeed, that he seemed in many respects to have led — entailed repeating a sophisticated deception numerous times, with various investors (many of whom were large public institutions), over nearly two years, and across international borders.  In such cases, the SEC claims, "it can be incredibly thorny to try to figure out [exactly] what kind of fraud someone will engage in next[.]"  [Dkt. No. 45, 02/19/2021 Hearing Tr. at 8:22-24].  Accordingly, the proposed injunction is tailored as far as it can be to the conduct Mr. McLellan was found to have committed in the criminal case, conduct he repeatedly engaged in over the course of a number of years, and is broadened reasonably to prohibit the same such behavior involving related securities.

As for the injunction's specificity and "reasonable detail," the provisions enjoined may be broad, but they are not complicated:  Mr. McLellan may not engage in fraud in the offering or sale of securities.  In this case, which involved complex transactions between high-level, international players, Mr. McLellan was competent enough to orchestrate a scheme netting tens of millions of dollars in overpayments over the course of at least eighteen months, and was aware enough of the illegality of his actions to attempt to cover them up.  Then, after his termination from State Street, he was expert enough in the field to conceive and run a successful independent consulting business.  In dealing with a sophisticated defendant who presumptively knows the securities laws and knows to consult a competent attorney if he has questions, specificity *ex-ante* may be sufficient.  Directing compliance with these foundational provisions can thus be said to fall within Rule 65's specificity requirements.

Additionally, to order injunctive relief preventing future violations of the securities laws, the Commission must show that "there is a reasonable likelihood" the defendant will violate the securities laws again in the future.  *Chan*, 465 F. Supp. 3d at 38 (cleaned-up).  In making my assessment, I utilize the factors outlined in *Sharp*, 626 F. Supp. 3d at 399, discussed *supra*.

23

The *Sharp* factors weigh in favor of the injunctive relief requested here.  Mr. McLellan's conduct was "egregious" by the standards of courts in this Circuit: he repeatedly defrauded at least six institutional investors over a period of nearly two years, in at least three different countries, netting $20 million in fraudulent overpayments.  *See, e.g.*, *Chan*, 465 F. Supp. 3d at 38 (finding "insider trading scheme which lasted for nearly two years and involved multiple trades" to be "egregious"); *Weed*, 315 F. Supp. 3d at 676 (finding securities fraud scheme that was repeated four times and prepped for a fifth to be egregious).  *Cf. SEC* v. *Lemelson*, 596 F. Supp. 3d 227, 233 (D. Mass. 2022) (finding violation involving three material false statements but no overarching scheme "merit[ed] a [temporary] injunction" because the defendant's "violation was not as severe as in many of the cases where courts ordered permanent injunctions") (Saris, J.), *aff'd* 57 F.4th 17, 31-32 (1st Cir. 2023).

During the scheme, Mr. McLellan engineered cover-ups, underscoring his understanding that the conduct in which he was engaged was unlawful.  *See, e.g.*, *SEC* v. *Cody*, No. 16-cv-12510-FDS, 2019 WL 6619195, at *4 (D. Mass. Dec. 5, 2019) (highlighting "the fact that [the defendant] made multiple misrepresentations over a prolonged period of time and created falsified documents to hide deceptions" in egregiousness

analysis) (Saylor, C.J.).  Moreover, although Mr. McLellan has acknowledged his transgressions and seems now to be cooperating with the SEC's processes of atonement, his remorse also appears mostly to be focused on the consequences he and his family have had to bear as a result of his actions, rather than on a genuine acknowledgement of his wrongdoing toward others and the public. *See, e.g.*, Dkt. No. 43.

Mr. McLellan may, however, never be in the position again to break these laws:  he has agreed to a permanent associational bar in the parallel administrative case before the SEC [Dkt. No. 47-1 at 2] and asserts that obtaining any job in finance will be difficult to impossible given felon status and the underlying conduct for which he has been convicted.  [Dkt. No. 43 at 4]. Yet he may later reapply to the Commission for relaxation of the associational bar subject to applicable laws and regulations [Dkt. No. 47-1 at 3], and if successful, the proposed injunction seems the least intrusive tool to protect the public while allowing Mr. McLellan to work in his self-reported "field of expertise" [Dkt. No. 43 at 4].[9]

---

[9] At the December 8, 2020 hearing regarding injunctive relief, I inquired whether the bar on Mr. McLellan's association with the securities industry should be included as part of the relief sought before this court, as opposed to solely being reflected in the parallel administrative proceedings before the SEC. [Dkt. No. 40 at 5:14–6:19]  I am satisfied that the inclusion of the associational bar in the Administrative Proceeding Order [*see* Dkt. No. 47-1] is sufficient to ensure adequate guardrails

Returning to the *Citigroup* fair and reasonable factors, I have concluded the core terms of the proposed Final Judgment are sufficiently clear. *Citigroup Glob. Mkts.*, 752 F.3d at 294-95. I note, however, that much of the Final Judgment's enforcement work is handled through and muddled by the accompanying Consent, which provides that it "shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein." [Dkt. No. 38-1 ¶ 7]. As I noted at the outset of this Memorandum, *supra* note 1, such an assimilation seems to fly in the face of Rule 65, which requires "[e]very order granting an injunction . . . [to] state its terms specifically". FED. R. CIV. P. 65(d)(1)(B). Nevertheless, being aware of no law directly permitting such a piecemeal filing in this context, for efficiency's sake I will simply note my concerns here regarding appropriate provisions and delete the accompanying purported extraneous consents from this court's final judgment.

---

regarding Mr. McLellan's ability to re-enter a securities-related profession. The SEC, with its significant knowledge of the securities industry, is in the best position to review any forthcoming request by Mr. McLellan to re-associate with the industry. In the event such an application is denied, Mr. McLellan has avenues to challenge the SEC action in federal court, further assuring me that there will be judicial oversight of the breadth of the associational bar. *Cf. Graham* v. *SEC*, 794 F. App'x 81, 83-85 (2d Cir. 2019) (reviewing denial of application to SEC for consent to re-associate with securities industry pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)).

Third, the Final Judgment reflects a resolution of the claims in the Complaint. [Dkt. No. 1]; *Citigroup Glob. Mkts.*, 752 F.3d at 294-95.  I give some deference to the Commission's determination that the settlement is a good one, after concluding that the "true measure" of that deference of course "depend[ing] on the persuasive power of the [Commission's] proposal and rationale, given whatever practical considerations may impinge and the full panoply of the attendant circumstances." *Standard Fin. Management Corp.*, 830 F.2d at 408 (noting that a "court, rather than blindly following the agency's lead, must make its own inquiry into the issue of reasonableness before entering [a consent] judgment").

Here, the Commission sought injunctive rather than monetary penalties.  The SEC's reasons for its chosen core injunctive relief have already been discussed, *supra*, and I am satisfied that such tailored relief, under the circumstances presented here, adequately addresses the claims in the Complaint.

One may reasonably ask why no monetary penalty?  Several factors provide a justification.

First, Mr. McLellan did not pocket the profits of his scheme; as he observes in his briefing, the fees generated by the undisclosed markups went to State Street, rather than to him directly.  While Mr. McLellan may have indirectly benefited by attaining his revenue goals as a result of the markups, there

27

was no proportionate dollar-for-dollar increase in his compensation as a result of his improper conduct. [Dkt. No. 43 at 1 n.1]; [Dkt. No. 40, 12/11/2020 Hearing Tr. at 16:9-17:11].

Second, Mr. McLellan has already shouldered criminal penalties, including incarceration, supervised release, and a $5,000 fine. At the December 11, 2020 hearing, the Commission asserted that "the imperatives of deterrence . . . get diminished when the same defendant for the same conduct has already been subject to other penalties[.]" [Dkt. No. 40, 12/11/2020 Hearing Tr. at 15:22-25].

Third, Mr. McLellan's financial situation, and that of his family, has been devastated as a result of these proceedings; as Mr. McLellan asserted before me, his "capacity to make even a fraction of what he made at State Street is over," and even though he might be better off than many, "he's [still] got an uphill financial battle when his incarceration concludes on supervised release." [*Id.* at 18:18-25]; *see also* Dkt. No. 43 at 4 (enumerating financial strains). Accordingly, I agree with the Commission that this is an appropriate case in which to decline to impose an additional financial penalty.[10]

---

[10] I note Judge Wolf entered a final judgment in *SEC* v. *Caplitz*, No. 1:13-cv-10612-MLW, ECF No. 78 (D. Mass. Feb. 14, 2020) that mirrors the requested judgment now before me. In *Caplitz*, the final judgment included an "obey-the-law" injunction but no monetary penalty or disgorgement. *Id.* at 3-4 Rather, the judgment "deemed" the disgorgement satisfied in light of an

Fourth, the Final Judgment is not tainted by any improper
collusion or corruption. *Citigroup Glob. Mkts.*, 752 F.3d at 294-
95.  There is "no evidence that the SEC has not 'conducted its
negotiations forthrightly and in good faith,'" *Acosta*, 2021 WL
5631726, at *2 (quoting *Cannons Eng'g Corp.*, 899 F.2d at 86),
and the Consent, which Mr. McLellan signed with a witness
present, further states that he entered into the agreement
"voluntarily," and "that no threats, offers, promises, or
inducements of any kind [were] made by the Commission or any
member, officer, employee, agent, or representative of the
Commission to induce" Mr. McLellan to enter the settlement.
[Dkt. No. 38-1 ¶ 6]; *see also* Dkt. No. 43 at 2 (Mr. McLellan's
memorandum in support of the proposed Final Judgment, noting
that the "parties engaged in arms' length negotiations to settle
the instant litigation").

Finding the proposed Final Judgment fair and reasonable, I
must now test whether the "public interest would not be
disserved" by the injunctive relief therein.  *Citigroup Glob.
Mkts.,* 752 F.3d at 294.  I see no reason to believe that the

---

order of restitution in Mr. Caplitz's parallel criminal case.
*Id.* at 4.  Because Mr. Caplitz received an incarcerative
sentence in his criminal case, no monetary penalty was required
of him in the civil matter.  *Id.*  Mr. Caplitz, like Mr.
McLellan, was barred from association with the securities
industry by administrative proceeding.  [*See* Dkt. No. 42 at 6
(citing parallel administrative proceeding)]

Final Judgment will harm the public, and thus defer to the SEC's policy choice that the proposed injunction is in the public's best interest.  *See Acosta*, 2021 WL 5631726, at \*2; *see also Cannons Eng'g Corp.*, 899 F.2d at 84.

## IV. CONCLUSION

For the reasons set forth more fully above, I GRANT the Commission's Assented-To Motion for Entry of Proposed Final Judgment Against Defendant Ross I. McLellan [Dkt. No. 38].  I will do so by issuing a separate Final Judgment in considerably more limited form than that requested.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
United States District Judge